**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| STEVE HOWZE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 09 C 3726 |
| v. ) | |
| ) | Judge Ronald A. Guzmán |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff filed this suit pursuant to 42 U.S.C. § 405(g) for review of a final decision denying his application for Disability Insurance Income and Supplemental Security Income benefits. The parties have filed cross motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, the Court affirms the Commissioner's decision.

### Discussion

The Court reviews the ALJ's decision *de novo* but gives deference to his factual findings. *Prochaska v. Barnhart*, 454 F.3d 731, 734 (7th Cir. 2006). The decision will be upheld if it is supported by substantial evidence, *i.e.*, evidence "sufficient for a reasonable person to conclude that [it] supports the decision." *Id.* at 735 (quotation omitted).

Plaintiff argues that the ALJ's decision violates Social Security Ruling ("SSR") 00-4p, which states that "before relying on VE [vocational expert] . . . evidence to support a disability determination, . . . [he] must . . . [i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs . . . and information in the Dictionary of Occupational Titles (DOT)." Policy Interpretation Ruling: Titles II and XVI: Use of Vocational

Expert and Vocational Specialist Evidence, SSR 00-4p, 2000 WL 1898704, at *1 (S.S.A. Dec. 4, 2000). The Ruling further states:

> When a VE . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that . . . evidence and information provided in the DOT. In these situations, the adjudicator will:
>
> Ask the VE . . . if the evidence he or she has provided conflicts with information provided in the DOT; and
>
> If the VE's . . . evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

*Id.* at *4. In this case, before the VE testified, the ALJ said: "If there's any difference in the way that the jobs are described and the way that they're normally done per the Dictionary of Occupational Titles you should let us know." (AR 53.)

Plaintiff contends that statement does not satisfy SSR 00-4p, citing *K. Harris v. Astrue*, No. 2:06-CV-222-PRC, 2008 WL 410577 (N.D. Ind. Feb. 11, 2008), as support. In that case, as here, the ALJ asked the VE, before she testified, to identify any conflicts between her testimony and the DOT. *Id.* at *8. The *K. Harris* court held that SSR 00-4p required the ALJ to make those inquiries after the VE testifies, not before. *Id.* Thus, the court found that the ALJ had not complied with the Ruling. *Id.*

The *K. Harris* court's interpretation is not compelled by the language of the Ruling, which says that an ALJ must make the inquiries before *relying on* VE testimony not before a VE testifies. SSR 00-4p, 2000 WL 1898704, at *1. Nor, as the *K. Harris* court acknowledged, is its interpretation dictated by any Seventh Circuit case. *K. Harris*, 2008 WL 410577, at *8. Moreover, that interpretation has been rejected in other cases, including *T. Harris v. Astrue*, 646 F. Supp. 2d 979 (N.D. Ill. 2009). In that case, as in *K. Harris*, the ALJ asked the VE, before she testified, "to tell the

2

court about differences between her impressions and those of the DOT." *Id.* at 988-89. Unlike the court in *K. Harris*, however, the *T. Harris* court rejected the notion that the timing of the ALJ's inquiry violated SSR 00-4p:

> The ALJ satisfied his duty to affirmatively ask whether any inconsistencies between the VE's testimony and information in the DOT existed. Before allowing the VE to state her opinion as to the plaintiff's RFC [residual functional capacity] with respect to the DOT, he asked her to consider the DOT's dictates and to highlight any differences. Plaintiff cites an unpublished district court case [*K. Harris*] to support her argument that posing a hypothetical question asking a VE to identify discrepancies between her expert opinion and the DOT prior to her testimony is legally insufficient. However, while recognizing an affirmative duty to inquire into possible discrepancies between a VE's testimony and the DOT, the Seventh Circuit has not established a singular method by which ALJs must elicit potential conflicts. Therefore, the ALJ satisfied this duty by asking the VE at the onset to describe her findings and to note where she differs from the DOT.

*Id.* at 995 (footnotes omitted); *see Williams v. Astrue*, No. 1:08-cv-477-ftm-29SPC, 2009 WL 2045339 at, *2 (M.D. Fla. July 8, 2009) (holding that pre-testimony inquiry is sufficient).

Given the plain language of the Ruling, this Court agrees with those in *T. Harris* and *Williams* that SSR 00-4p does not require post-testimony inquiry. Thus, the ALJ's pre-testimony inquiry in this case satisfied his duty under the Ruling.

Plaintiff also contends that the ALJ's hypothetical question to the VE was flawed because it did not include the limitation of light exertion work, which the ALJ included in his RFC finding. *See Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002) (stating that hypothetical questions must include "*all* limitations supported by medical evidence in the record" (emphasis original)). However, the finding itself shows that the ALJ chose the light-work category to accommodate plaintiff's non-exertional limitations:

> I give controlling weight to the opinions expressed by the non-examining State agency consultants . . . , who found that the claimant retains the ability to perform the full range of exertional work . . . . Because of balancing and other limitations,

3

> I find for the sake of this decision that it is appropriate to limit the claimant to a light level of exertion. I note that no exertional limitations were provided by any of the claimant's treating sources.

(AR 22; *see id.* 205-11, 221-22 (Agency examiners' reports).) The record also shows that the ALJ asked the VE about the availability of jobs within those specific limitations. (AR 58-64.) Moreover, the VE testified that most of the jobs plaintiff can perform are "light work" but, because he "ha[s] the capacity to lift more than 20 pounds," he is not strictly limited to light work. (AR 65.) In short, the evidence shows that the ALJ's questioning of the VE accounted for all of the limitations in the RFC finding.

Next, plaintiff argues that the ALJ impermissibly ignored the VE's testimony that some of his limitations make him unemployable. The VE testified, in response to hypothetical questions posed by plaintiff's counsel, that a person who needs to take numerous breaks during the work day and whose seizures disrupt the workplace up to six times per year would not be employable. (AR 66-67.) But the only evidence that suggests these limitations actually exist is plaintiff's testimony, which the ALJ did not believe. (*See* AR 22.) Though an ALJ cannot ignore evidence that contradicts his decision, he is not required to credit the VE's responses to hypothetical questions incorporating limitations that are not supported by credible evidence. *See Groneman v. Barnhart*, No. 06 C 0523, 2007 WL 781750, at *13 (N.D. Ill. Mar. 9, 2007); *Stubbs v. Apfel*, No, 97 C 7069, 1998 WL 547107, at *9 (N.D. Ill. Aug. 20, 1998). Therefore, the ALJ's failure to consider the VE's responses to counsel's hypothetical questions was not erroneous.

Finally, plaintiff argues that the ALJ's credibility determination does not comply with SSR 96-7p, which requires the ALJ to: (1) determine if the claimant has "a medically determinable physical or mental impairment(s) that could reasonably be expected to produce [his] symptoms";

and, if so, (2) evaluate "the intensity, persistence and functionally limiting effects of the symptoms . . . [to] determine the extent to which the symptoms affect [his] ability to do basic work activities." Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996). The Ruling further tells the ALJ to "consider the entire case record" in determining the credibility of the claimant's statements and to state "specific reasons" for the credibility finding that are supported by record. *Id.* at *1-2.

The record shows that the ALJ fully complied with the Ruling. He set forth the appropriate standard and reviewed all of the evidence – the records from plaintiff's treating physicians, the reports from the Agency's examiners, plaintiff's application for benefits, and the testimony he and his witnesses offered about his symptoms, activities, limitations, medications and medical treatment. (AR 18-22.) After doing so, the ALJ concluded that plaintiff's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms" and "the[] assertions [of his witnesses] regarding the severity of [his] impairment" were not credible for the following reasons: (1) plaintiff was "hostile and belligerent" and "provided information only reluctantly and generally"; (2) plaintiff's testimony about his education contradicted the information he gave in his application; (3) plaintiff's testimony that he had not had a seizure in the last eighteen months to two years contradicted that of his girlfriend, who said he had a seizure just a few weeks earlier; (4) plaintiff's medical records show that he repeatedly failed to take his medication as prescribed and he failed to provide pharmacy records as requested; and (5) plaintiff told his treating physicians that he had a seizure once every eight to twelve months, but he, his girlfriend and his girlfriend's mother told the Agency that he had one to four seizures per month. (AR 18-22.) The ALJ's credibility analysis, which the Court reviews deferentially, fully satisfies SSR 96-7p. *See Eichstadt v. Astrue*, 534 F.3d 663,

5

667-68 (7th Cir. 2008) (stating that an ALJ's credibility finding should be overturned only if it is "patently wrong" (quotation omitted)).

**Conclusion**

For the reasons set forth above, the Court affirms the Commissioner's final decision denying plaintiff's application for benefits. Therefore, the Court denies plaintiff's amended motion for summary judgment [doc. no. 22], grants the Commissioner's motion for summary judgment [doc. no. 28] and terminates this case.

**SO ORDERED.**                        **ENTERED:**

**August 3, 2010**

*Ronald A. Guzman*

_____
**HON. RONALD A. GUZMAN**
**United States District Judge**